UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| LIMA LS PLC, | Case No. 15-MC-0359 |
|            *Petitioner*, | |
|   v. | Case Pending in District of Connecticut: |
| NASSAU REINSURANCE GROUP HOLDINGS, L.P., PHILLIP J. GASS, and KOSTAS CHELIOTIS, | No. 3:12-CV-001122 (WWE) |
|            *Respondents*. | |

**NASSAU REINSURANCE GROUP HOLDINGS, L.P., PHILLIP J. GASS, AND KOSTAS CHELIOTIS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLARIFICATION AND RECONSIDERATION OF THE COURT'S ORDER <u>GRANTING RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS</u>**

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Respondents*

# TABLE OF CONTENTS

                                                                                               **Page**

TABLE OF AUTHORITIES .................................................................................................. iii

I.      PRELIMINARY STATEMENT ........................................................................................1

II.     BACKGROUND ................................................................................................................3

III.    ARGUMENT .....................................................................................................................4

         A.      Reconsideration Standard ......................................................................................4

         B.      The Order Should be Clarified to Limit Production to Requests 7 and 8 ................4

         C.      The Court Should Consider the Proportionality of the Requests and Modify the Subpoena to Prevent Imposing an Undue Burden .....................................................8

                 1.      The Substantial Burden Imposed by the Requests as Drafted is Readily Apparent ..................................................................................................8

                 2.      Compliance With the Order Would Be Extremely Burdensome .................9

         D.      The Motion Should Be Transferred or the Requests Should be Modified ...........10

                 1.      The District of Connecticut is the Proper Forum to Decide These Matters ......................................................11

IV.    CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                           **Page(s)**

*Agincourt Gaming, LLC, v. Zynga, Inc.*,
  No. 2:14-cv-0708 (RFB) (NJK), 2014 WL 4079555 (D. Nev. Aug. 15, 2014)..................11

*Bernstein v. Mafcote, Inc.*,
  No. 3:12-CV-311, 2014 WL 3579494 (D. Conn. July 21, 2014) ........................................8

*FDIC v. Axis Reins. Co.*,
  No. 13 Misc. 380 (KPF), 2014 WL 260586 (S.D.N.Y. Jan. 23, 2014).........................11, 12

*In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*,
  No. 12-MC-221 (RPP), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ........................... 8-9

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
  No. 03-CIV-5560(RMB) (HBP), 2008 WL 4452134, (S.D.N.Y. Oct. 2, 2008)..................9

*Koch v. Greenberg*,
  No. 07-CIV-9600 (BSJ) (DF), 2009 WL 2143634 (S.D.N.Y. July 14, 2009).....................9

*San Juan Cable LLC v. DISH Network LLC*,
  No. 14-mc-00261-RM-MJW, 2015 WL 500631 (D. Colo. Jan. 23, 2015) .......................12

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
  No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) ..................9

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245, 1255 (2d Cir. 1992)...................................................................................4

**Statutes and Rules**                                    **Page(s)**

Advisory Committee Notes to Rule 45(f) (2013) ...........................................................................11

Fed. R. Civ. P. 26(b)(1)..............................................................................................................2, 9

Fed. R. Civ. P. 45(c) .......................................................................................................................11

Fed. R. Civ. P. 45(d)(3)(A)(iv) ....................................................................................................2, 8

Fed. R. Civ. P. 45(f).....................................................................................................................3, 11

SDNY Local Rule 6.3.....................................................................................................................10

SDNY Local Rule 37.1 ....................................................................................................................6

**Other Authorities**                                                                                                        **Page(s)**

18B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §4478 ..............................4

Respondent Non-Parties Nassau Reinsurance Group Holdings, L.P. ("Nassau"), Phillip J. Gass ("Gass"), and Kostas Cheliotis ("Cheliotis" and, together with Nassau and Gass, "Respondents" or the "Nassau Non-Parties") respectfully submit this Memorandum of Law in Support of their Motion for Reconsideration and Clarification of the Court's Order Granting Rule 45 Motion to Compel Compliance With Subpoenas (the "Order").

## I.   PRELIMINARY STATEMENT

Respondents respectfully submit that the Court's Order granting Petitioner's motion to compel does not reflect the issues addressed by the Court or the narrow relief intended by the Court at the end of the November 24, 2015 hearing.  Specifically, Respondents believe the Court intended to compel production only as to requests 7 and 8, which were the subject of the discussions between the parties and the Court, rather than the entire Subpoenas.  While the Subpoenas contain eight document requests, including several exceedingly broad and burdensome requests (such as "All documents concerning Phoenix," the defendant in the underlying litigation),[1] the parties' meet-and-confer efforts and argument before this Court focused almost exclusively on the two narrower requests:  request 7, related to valuation of insurance policies owned by Lima, and request 8, related to the underlying litigation.  As characterized by Petitioner's counsel, "During the November 17 hearing, the Court stated that the parties should meet and confer cooperatively and in good faith about the Nassau Parties' production of documents responsive to two of the requests (nos. 7 and 8) in Lima's Subpoenas."[2]  Based on these discussions, Respondents believed Petitioner had withdrawn all but requests 7 and 8 or, at least, that Petitioner's motion to compel was addressed to those requests alone.

---

[1]  *See* Exhibit A to Subpoena to Nassau ("Nassau Subpoena"), attached as exhibit 3 to the Declaration of Declaration of Allan Arffa ("Arffa Dec."), Doc. 3.

[2]  *See* Declaration of Jessica S. Carey ("Carey Dec."), Doc. 14, at ¶ 2.

1

The November 24 hearing did not involve substantive discussion of any of the eight requests but focused instead on what the Court deemed "threshold issues."[3] At the conclusion of the hearing, the Court stated that "I am persuaded by plaintiff's arguments that the court should grant the request and compel the production of the documents, insofar as the court finds that they are both relevant and that the defendants here have not presented a compelling case for argument that complying with the request would be burdensome."[4] The Court then directed Petitioner's counsel to submit a proposed order that "contains the appropriate language <u>in light of the discussions that we have had</u> and any subsequent submissions."[5]

Nevertheless, the Court's Order (drafted and submitted by Petitioner) appears to compel the production of documents responsive to *all* of the Subpoenas' requests, and in follow-up conversations with Respondents' counsel, Petitioner has refused to limit its requests for documents to the requests discussed at the hearings before this Court.[6] Because Respondents do not believe the Court intended to extend the Order beyond requests 7 and 8 and because of the undue burden compliance would require, Respondents respectfully request clarification or reconsideration, as appropriate.

Additionally and alternatively, to the extent the Court did intend the Order to apply to all eight requests, the Court should reconsider its Order in light of facts and arguments not addressed by the Court in its determination of Petitioner's motion. First, Rule 45(d)(3)(A)(iv) requires the Court to modify a subpoena when it subjects a person to undue burden. Similarly, the recent

---

[3]  *See* Transcript of November 24 hearing ("Nov. 24 Trans."), Doc 16, at 3:8-9.

[4]  *Id.* at 20:19-24.

[5]  *Id.* at 21:8-10 (emphasis added).

[6]  Substitution counsel for Nassau, retained on December 7, reached out to counsel for Lima that morning to request an extension of the deadline to file a motion for consideration, if any. Counsel for Lima rejected this request and, during the same discussion, would not agree that the Order was limited to requests 7 and 8.

2

amendment to Rule 26(b)(1) expressly requires the Court to assess not only relevance but also the proportionality of the discovery sought to the burden imposed by the request.  As discussed, here the parties and the Court focused on the more specific requests 7 and 8.  But the other requests are overbroad on their face and will impose an undue burden disproportional to Lima's need for these documents.[7]  Particularly considering that Respondents are non-parties, and that any actually relevant documents would be obtainable from the defendants in the underlying litigation, the need to protect Respondents from burden here is especially clear.

Additionally, under the recent amendments to Rule 45(f), the motion should have been transferred to the District of Connecticut as Respondents consented to the transfer and, as matters now stand, the potential for inconsistent rulings and duplication of judicial resources on these overlapping issues is high.

Respondents respectfully request that the Court vacate the Order and either deny or limit Petitioner's motion or, consistent with Rule 45(f), transfer the motion to the District of Connecticut where identical discovery issues are being considered by the Connecticut court that has managed discovery disputes for two years.

## II.     BACKGROUND

In September, Respondent Nassau entered into an agreement to purchase The Phoenix Companies, Inc. ("Phoenix"), a publicly traded, 160-year-old insurance company, for $217.2 million along with a commitment to add $100 million of equity to Phoenix's books (the "Transaction").  The Transaction is currently pending approval by Phoenix's shareholders and other closing conditions.  *See* September 29, 2015 Form 8-K, attached as Exhibit 1 to Arffa Dec.

---

[7] Indeed, since entry of the Order, Respondents have confirmed the existence of over 25,000 documents totaling over 135,000 pages that are potentially responsive to the Subpoenas' overbroad requests.

Nassau is backed by a capital commitment from private equity firm Golden Gate Capital ("Golden Gate").

Petitioner Lima is ultimately controlled by investment management firm Fortress Investment Group, LLC ("Fortress"), and has been engaged in litigation with Phoenix in the District of Connecticut since August 2012 (the "Connecticut Litigation"). Fortress and Golden Gate are both investment firms whose businesses are largely predicated on the ability to assess investment opportunities and recognize value where the rest of the market does not. In other words, they are direct market competitors who closely guard commercially sensitive information.

The Subpoenas at issue here seek "all documents" concerning, among other things, Phoenix, the Transaction, and Nassau's diligence regarding the Transaction. These requests are overbroad on their face and, unsurprisingly, there is a vast universe of documents that are potentially responsive. Within this vast universe are privileged and commercially sensitive documents that, while having no relevance to the Connecticut Litigation, would provide Fortress unfair and improper advantage in any settlement negotiations and other market transactions.

### III.  ARGUMENT

#### A.  Reconsideration Standard

The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §4478). Here, the second and third prongs of that test are plainly satisfied and clarification or reconsideration of the Order is appropriate.

4

**B.     The Order Should be Clarified to Limit Production to Requests 7 and 8**

The Court's Order requires Respondents to produce "all non-privileged documents within their possession, custody or control that are responsive to the Subpoenas." *See* Order. The "all documents" requests in Lima's Subpoenas fall into four categories:

(1) Patently Overbroad Requests:

- Req. No. 1.    All documents concerning Phoenix.

- Req. No. 2.    All documents concerning the Merger Transaction.

- Req. No. 3.    All documents concerning any due diligence efforts, whether by you, your representative or others, in connection with the Merger Transaction.

- Req. No. 5:    All documents exchanged between you and . . . Golden Gate, in connection with the Merger Transaction.

(2) Requests About the Transaction:

- Req. No. 5:    All documents exchanged between you and Phoenix (or its financial advisors) . . . in connection with the Merger Transaction.

- Req. No. 6:    All documents (a) provided to or received from Regulators in connection with the Merger Transaction, (b) concerning any presentation to any Regulator in connection with the Merger Transaction, or (c) concerning or constituting any Regulator's analysis, review, rejection and/or approval of the Merger Transaction.

(3) Requests for Phoenix's Documents:

- Req. No. 4:    All documents you (or your representatives) reviewed or that were made available to you (or your representatives) in connection with the Merger Transaction, including without limitation any documents (a) made available in any "data room" or (b) provided to you pursuant to the May 1, 2015 and/or May 21, 2015 Confidentiality Agreements referenced at Section 6.4(b) of the Merger Agreement.

(4) Specific Requests about Lima and the Connecticut Litigation:

- Req. No. 7:    All documents concerning the Lima Portfolio, including without limitation all documents concerning (a) the valuation of the Lima Portfolio or any subset of the assets in the Lima Portfolio, or (b) any communications between you (or your representatives) and

5

- Req. No. 8: Regulators and/or Phoenix (or its financial advisors or other representative) regarding the Lima Portfolio or its valuation, in whole or in part.

- Req. No. 8: All documents concerning the Fortress-Phoenix Actions, including without limitation all documents concerning (a) the actual or potential extent of Phoenix's liability with respect to those Actions, (b) any reserves Phoenix has established (or considered establishing) with respect to those Actions or that liability, or (c) any communications between you (or your representatives) and Regulators and/or Phoenix (or its financial advisors or other representatives) concerning the Fortress-Phoenix Actions or Phoenix's potential liability with respect to those Actions.

Nearly all of Lima's requests are thus patently overbroad on their face and fail to identify with reasonable particularity the documents that are actually sought. Given that Nassau has entered into a $315 million transaction that involves the purchase of the publicly traded Phoenix, producing "all documents" related to Phoenix, the Transaction, and its due diligence efforts is per se unduly burdensome and harassing.

Notably, in briefing its motion to compel, Lima did not even attempt to justify the relevance of "all documents concerning Phoenix", "all documents concerning the Merger Transaction" or any of its other overbroad requests. Unable to justify the breadth of its requests, Lima instead tried to obfuscate in its briefing by identifying specific categories of documents that it claimed would fall under the umbrella of its general requests, and then arguing for the relevance of these previously unspecified categories:[8]

> In particular, Phoenix, in connection with the Merger Transaction, likely provided the Subpoena recipients with information about the Phoenix policies, the value of those policies on the secondary market, and the matters at issue in the underlying Action between Lima and Phoenix and in the U.S. Bank Actions. Indeed, the parties to the Merger Transaction no doubt

---

[8] As noted in Respondents' brief in opposition to the motion to compel, Lima wholly failed to comply with Local Rule 37.1, which required Lima to set forth verbatim each request as well as the reasons it was entitled to prevail on each request. SDNY Local Rule 37.1. One obvious purpose of Local Rule 37.1 is to ensure that the moving party is entitled to enforce only the discovery actually issued and ordered rather than a hypothetical set of discovery that *could* have been issued.

6

> discussed or exchanged information as to <u>Phoenix's approach toward investor-owned policies</u>, including <u>Phoenix's handling of claims</u> as to such policies, its <u>recording of transfers</u> of those policies, and its <u>efforts to increase COI rates</u> on those policies - all highly relevant topics in the Action (and in the U.S. Bank Actions).

*See* Memorandum of Law in Support of Lima's Motion, Doc. 2 at 13. Similarly, in the Connecticut Litigation, Lima acknowledged that the parties needed to "figure out limitations" to the scope of identical requests served on Phoenix so that they could "get to the heart of what is relevant."

At the November 17 hearing, Lima's arguments for relevance focused on requests 7 and 8, and – as Lima itself expressly has acknowledged – the Court ordered the parties to meet and confer further on these two specific requests before reconvening for a hearing on November 24. *See* Carey Dec. at ¶2. The parties then met and conferred as to these two specific requests, but were unable to reach an agreement. *See* Nov. 24 Trans. at 11:16-24. Based on these discussions, Respondents believed Petitioner had withdrawn all but requests 7 and 8.

The November 24 hearing did not involve substantive discussion of any of the eight requests but focused instead on what the Court deemed "threshold issues." *See* Nov. 24 Trans. at 3:8-9. After addressing these two issues, the parties reported to the Court that an agreement was not reached during the meet and confer process, with both parties again acknowledging that the pertinent document requests were limited to requests 7 and 8. *See* Nov. 24 Trans. at 6:8-19 (discussion by Ms. Carey regarding documents related to valuations (request no. 7) and the Fortress-Phoenix Litigation (request no. 8); *id.* at 11:16-24 (discussion by Ms. Barday regarding Ms. Carey's narrowing of requests during meet and confer to requests 7 and 8).

Thus, it was clear that the only two requests the Court was being asked to rule upon were requests 7 and 8. At the end of the hearing, after granting the motion to compel, the Court directed Lima's counsel as follows:

7

> Ms. Carey, to the extent that you submitted a proposed order, you may examine it, see if it contains the appropriate language <u>in light of the discussions that we have had and any subsequent submissions</u>, and the court will adopt it.

*See* Nov. 24 Trans. at 21:7-10 (emphasis added).

The Order submitted by Lima was not limited to requests 7 and 8, which it should have been in order to conform with "the discussions" before the Court. Respondents do not believe the Court intended to require compliance with the Subpoenas *in toto* – and without regard to burden or overbreadth of any of the requests – as the Order currently requires, especially in light of the facially overbroad nature of many of the requests. As such, Respondents respectfully request that the Court clarify or reconsider its Order, as appropriate.

### C. The Court Should Consider the Proportionality of the Requests and Modify the Subpoena to Prevent Imposing an Undue Burden

#### 1. The Substantial Burden Imposed by the Requests as Drafted is Readily Apparent

The patent overbreadth of the Subpoenas along with the expedited pace at which Lima pursued its motion impaired Respondents' ability to timely assess burden. The motion to compel was filed less than 30 days after the first of the three Respondents was served with a subpoena, and after the issue had already been raised to the court in the Connecticut Litigation. Respondents had only seven days to brief their response. Given the fact that requests 1 and 2 call for production of every shred of paper concerning a publicly-held 160-year-old insurance company, which Nassau is purchasing as part of a $315 million transaction, even assessing the burden associated with compliance is a significant undertaking.

Where requests are on their face overbroad and unduly burdensome as is the case here, Rule 45(d)(3)(A)(iv) requires the Court to reject or modify the subpoena. Indeed, courts routinely

refuse to compel production by third parties for these facially overbroad requests.[9] Moreover, under the recently enacted amendments to Rule 26(b)(1), it is clear that the drafters of the Federal Rules intended for courts to specifically assess the proportionality of the discovery sought, in addition to assessing relevance. Indeed, as one court in this district already has pointed out, the Advisory Committee Notes provide that the amended rule "is intended to 'encourage judges to be ***more aggressive*** in identifying and discouraging discovery overuse' by emphasizing *the need to analyze proportionality before ordering production of relevant information*." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (emphasis added).

## 2. Compliance With the Order Would be Extremely Burdensome

As the parties' discussions and arguments focused on just two of the requests, and as the Motion was briefed on a very short timeframe, Respondents did not (and would not have been able to) fully analyze the burden of compliance with the full Subpoenas before the Order was entered. Since the Court entered the Order, in addition to other document collection efforts, Respondents' counsel and e-discovery vendor ran a number of key-word searches across Respondents' email boxes designed to identify documents likely responsive to the requests, including "Phoenix or PHL

---

[9] *See, e.g.*, *Bernstein v. Mafcote, Inc.*, No. 3:12-CV-311, 2014 WL 3579494, at *2 (D. Conn. July 21, 2014) (quashing defendant's subpoena to non-party former employer of plaintiff seeking "any and all documents . . maintained by [Deloitte] concerning . . . Deloitte's employment of [plaintiff] in Stamford, CT," noting that "the subpoena in its current form is facially overbroad" as it potentially encompasses confidential and irrelevant information); *In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12-MC-221 (RPP), 2012 WL 4841945, at *9 (S.D.N.Y. Oct. 10, 2012) (quashing plaintiff's request for all communications between plaintiff's joint-venture partner and putative acquirer of joint venture relating to the venture's submarine cable because it would "compel production of thousands of documents related to [partner's] internal communications about its subsidiary, but which would have little connection to [partner's] intent to commence legal proceedings against [plaintiff]."); *Koch v. Greenberg*, No. 07-CIV-9600 (BSJ) (DF), 2009 WL 2143634, at *5 (S.D.N.Y. July 14, 2009) (finding requests for "all documents" in non-party's possession concerning other non-parties since requests sought documents unrelated to subject matter at issue); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-CIV-5560(RMB) (HBP), 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) (quashing subpoena with respect to requests seeking (1) "all documents" relating to plaintiff in possession of insurer provider and (2) documents outside the relevant time period for litigation.).

or PNX or PHX," "Golden Gate," "Fortress or FIG," and "Lima". The result was over 26,000 documents that will need to be reviewed, including communications with counsel and other privileged documents. The documents exceed 135,000 pages. Reviewing these documents for privilege and responsiveness, especially in light of the Court's Order to complete production and provide a privilege log by December 25, 2015, will impose a significant burden. Conservatively, such a review will cost Respondents at least $200,000, in addition to the significant costs of preparing a privilege log for the substantial number of documents that are likely protected by the attorney-client and work product protections. Additionally, even if the Court's Order was limited to just requests 7 and 8, the burden would still be significant, as restricting searches to just "Fortress" and "Lima" will necessitate a review of over 5,500 documents.[10]

### D. The Motion Should Be Transferred or the Requests Should be Modified

When understood in the context of the discussions between the parties, it is clear that Lima's Subpoenas are simply an effort to obtain Respondents' proprietary and highly confidential analysis of a complex, $315 million transaction involving the sale of a publicly held company. Lima's refusal to agree to either stay its motion pending resolution of the same issues in Connecticut, or transfer the motion to Connecticut, appears to be a textbook example of the gamesmanship the drafters of the Federal Rules sought to eliminate in amending Rule 45 to provide for near-automatic transfers of ancillary proceedings to the District Court from which the subpoena was issued when the subpoenaed party consents.[11]

---

[10] In deference to Local Rule 6.3's restriction on submitting declarations, Respondents have not sought to submit declarations on the burden they now face with complying with the Order. However Respondents provide this information as an offer of proof and are prepared to submit supporting declarations if requested.

[11] Lima's assertion that *Respondents* are engaged in gamesmanship is entirely unfounded. Respondent Nassau is a start-up with only two executives, Respondents Gass and Cheliotis. The Southern District of New York is the location where compliance with the subpoena is required and where the Motion was properly filed, but Nassau expressly consented to the transfer of the Motion to the issuing court, the District of Connecticut. *See* Nassau Non-Parties' Memorandum of Law in Opposition to Lima's Motion, Doc. 7, at 24-5. It is Petitioner, not Respondents, who is seeking multiple bites at the discovery apple. Moreover, while Lima has sought to delay the issuing court's rulings

Given the complexity of the issues surrounding the Connecticut Litigation and the breadth of documents sought by Lima, it is likely that additional oversight will be necessary and a Rule 45(f) transfer to the District of Connecticut would serve judicial economy.

### 1. The District of Connecticut is the Proper Forum to Decide these Matters

Respondents expressly consented to the transfer to the District Court in Connecticut in its opposition. In these situations, courts routinely transfer subpoena-related motions to the issuing court so as not to "hamstring" the issuing court's "ability to control and delineate the parameters of discovery" in the underlying action. *FDIC v. Axis Reins. Co.*, No. 13 Misc. 380 (KPF), 2014 WL 260586, at *3 (S.D.N.Y. Jan. 23, 2014). Indeed, the primary purpose of allowing resolution of subpoena-related motions under Rule 45(c) is to protect local non-parties from the burden of challenging a subpoena in a remote location. *See* Advisory Committee Notes to Rule 45(f) (2013). However, when a local non-party consents to a transfer, the need to protect the non-party is vitiated and the primary focus should be on ensuring judicial consistency and efficiency in the underlying litigation. *See, e.g.*, *Agincourt Gaming, LLC, v. Zynga, Inc.*, No. 2:14-cv-0708 (RFB) (NJK), 2014 WL 4079555, *6 (D. Nev. Aug. 15, 2014) ("'transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts'") (citation omitted); Advisory Committee Notes to Rule 45(f) (2013) ("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions."). Thus, under the amended rules, transfers to the issuing district should be near automatic where the subpoenaed party

---

as to the discoverability of these documents, Lima has proceeded at breakneck pace to compel production from non-party Respondents in this Court.

11

consents. *See, e.g.*, *Axis Reins. Co.*, 2014 WL 260586, at *3 ("[T]he new Rule 45(f), and the comments thereto, clearly permit and encourage such action."); *San Juan Cable LLC v. DISH Network LLC*, No. 14-mc-00261-RM-MJW, 2015 WL 500631, at *1 (D. Colo. Jan. 23, 2015) (once the non-party requests a transfer the Court need not consider "exceptional circumstances," and "[i]t is enough to note that the requested transfer does not appear to be frivolous or made in bad faith").

Here, the District Court in the Connecticut Litigation has held discovery conferences on a monthly basis for nearly two years, and has overseen the production of millions of pages of documents between these two parties, who are engaged in highly contentious litigation. In the Connecticut Litigation, Phoenix has moved for protection on a virtually identical set of discovery requests as those at issue here (and, indeed Lima's request here expressly requests production of Phoenix's documents). As the District of Connecticut is already dealing with these same issues, it is in the best position to resolve subpoena-related motions. As Respondents have consented to transfer to the issuing district, judicial efficiency would best be served by transferring the motion to that district.

Moreover, regardless of whether the Court clarifies or grants reconsideration of its Order, it is substantially likely that there will be additional discovery disputes regarding the Subpoenas. There is already a significant dispute regarding the privileged status of Respondents' analysis of Lima's policies and the Connecticut Litigation. It is highly likely that additional court intervention will be necessary before these issues are resolved, and highly likely that the same issues will be addressed in the Connecticut Litigation. There is thus a substantial likelihood of conflicting or inconsistent discovery rulings. Further duplicating proceedings here and in the District of

Connecticut is a waste of judicial resources. As such, the Court should reconsider its Order, vacate its ruling and transfer the Motion to the District of Connecticut.

## IV. CONCLUSION

For the foregoing reasons, the Court should vacate the Order Granting Rule 45 Motion to Compel Compliance With Subpoenas and:

(1) Deny Lima's motion to compel;

(2) Transfer the motion to the District of Connecticut; and/or

(3) Clarify that the Order applied only to requests 7 and 8.

Dated: December 9, 2015
New York, New York

                Respectfully submitted,

                KASOWITZ, BENSON, TORRES
                  & FRIEDMAN LLP
                By:    /s/ Joshua M. Greenblatt
                    Joshua M. Greenblatt (jgreenblatt@kasowitz.com)
                    Gavin D. Schryver (gschryver@kasowitz.com)

                1633 Broadway
                New York, N.Y. 10019
                Tel.:  (212) 506-1700
                Fax:  (212) 506-1800

                *Attorneys for Respondents*